Mark L. Javitch (SBN 323729)
JAVITCH LAW OFFICE
*mark@javitchlawoffice.com*
3 East 3rd Avenue, Suite 200
San Mateo, CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705

[Additional attorneys listed on signature page]

*Attorneys for Plaintiff and the Proposed Classes*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TRACEY SEMIEN, on behalf of her minor child R.S., and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SPARKMD INC. d/b/a BLUEBERRY PEDIATRICS, BLUEBERRY MEDICAL PA, and METABASE, INC.,<br><br>Defendants. | Case No. 5:26-cv-13000<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Tracey Semien, on behalf of her minor child R.S. ("Plaintiff"), and on behalf of all other persons similarly situated, by and through counsel, brings this Class Action Complaint against Defendants SparkMD Inc. d/b/a Blueberry Pediatrics ("Blueberry"), Blueberry Medical PA ("Blueberry Medical"), and Metabase, Inc. ("Metabase") (collectively, "Defendants"), and alleges upon personal knowledge as to her own actions and experiences, and upon information and belief as to all other matters, as follows:

## INTRODUCTION

1. Blueberry and Blueberry Medical are affiliated virtual pediatric healthcare providers that offer care through Blueberry, allowing families to consult clinicians 24/7 by chat,

phone, or video.[1]

2. Metabase is an analytics tool/software company and one of Blueberry Medical's technology providers.[2]

3. Defendants failed to comply with regulatory, legal, ethical, and industry standards for cybersecurity and confidentiality of patient records, failed to take reasonable security measures, such as training employees to identify phishing emails, employing biometric or multi-factor authentication requirements for authorized users, and monitoring for unusual activity, and failed to prevent, detect, and adequately respond to a foreseeable data breach carried out by cyber criminals.

4. As a result, criminals gained unauthorized access to, copied, and stole Plaintiff's and Class members' Private Information (the "Data Breach").

5. The total number of individuals who have had their data exposed due to Defendants' failure to implement appropriate security safeguards is unknown at this time but is reported to the Oregon Secretary of State to affect 340,915 individuals.[3]

6. Plaintiff received a letter in the mail dated October 9, 2026, stating that, on August 22, 2026, Blueberry Medical discovered evidence of a data security issue that was created by a criminal exploitation of a vulnerability at Metabase, which resulted in the theft of a copy of some Blueberry Medical patient data, including Plaintiff's patient data. An image taken of the letter is attached to the Complaint as **Exhibit A**.

7. According to the letter, the information stolen by the criminal hackers includes Plaintiff's "name, health plan name and policy number, date of birth, and health care

---

[1] *How it Works*, https://www.blueberrypediatrics.com/how-it-works? (last visited October 30, 2026).

[2] *Open source AI analytics you can verify*, https://www.metabase.com/ (last visited October 30, 2026).

[3] https://justice.oregon.gov/consumer/databreach/ (last visited October 30, 2026).

information such as medical records, dates of service, medical codes, and charges for services." *See* **Exhibit A**.

8. Although Defendants claim that they learned of the Data Breach on August 22, 2026, they unreasonably delayed notifying Plaintiff by mailing a letter to her on or after October 9, 2026, giving criminals a head start to commit identity fraud, theft, and wreak havoc to Plaintiff's and Class members' personal finances, identities, and accounts.

9. As a direct result of the Data Breach, Plaintiff and Class members have suffered numerous concrete injuries and will suffer additional injuries into the future. Plaintiff seeks damages and other legal and equitable relief for the following categories of harms: (a) invasion of privacy; (b) financial costs incurred mitigating the imminent risk of identity theft; (c) loss of time and loss of productivity incurred mitigating the imminent risk of identity theft; (d) financial costs incurred due to actual identity theft; (e) the cost of future identity theft monitoring; (f) loss of time incurred due to actual identity theft; (g) failure to receive the benefit of the bargain when Defendants failed to provide adequate and reasonable protection that caused the Data Breach; and (h) deprivation of value of Private Information.

10. Plaintiff brings this class action against Defendants for Defendants' negligence, negligence *per se*, breach of implied contract, breach of fiduciary duty, unjust enrichment, and violation of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code §§ 17.41, *et seq*. Plaintiff seeks injunctive relief, declaratory relief, monetary damages, and all other relief as authorized in equity or by law.

## PARTIES, JURISDICTION & VENUE

11. Plaintiff is a natural person and a citizen of Texas, where she intends to remain. Plaintiff brings this action on behalf of her minor child R.S.

12. Blueberry is a corporation formed in Delaware, with its principal place of

business at 2672 Bayshore Parkway, Suite 608, Mountain View, CA 94043.

13. Blueberry Medical is a professional association formed in Florida, with its principal place of business at 2672 Bayshore Parkway, Suite 608, Mountain View, CA 94043.

14. Metabase, Inc. is a corporation formed in Delaware, with its principal place of business at 100 Pine Street, Suite 1250, San Francisco, CA 94111.

15. This Court has subject matter jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), because this is a class action involving 100 or more Class members and the amount in controversy exceeds $5,000,000, exclusive of interest and costs. Many members of the Class, including Plaintiff, are citizens of different states from Defendants.

16. Venue is proper because Defendants reside in this District and a substantial part of the events giving rise to this action occurred in this District.

17. Pursuant to Civil L.R. 3-2(c), (e), this case is properly assigned to the San Jose Division because a substantial part of the events or omissions that give rise to Plaintiff's and Class members' claims occurred in the County of Santa Clara, California.

## FACTUAL ALLEGATIONS

18. Defendants are HIPAA-regulated businesses that provide services in connection with virtual pediatric healthcare. In so doing, they receive and maintain the highly sensitive personal identifiable information and protected health information—together "Private Information"—of thousands of their patients and/or their clients' patients in the context of the patient/physician confidential relationship.

19. Defendants acquired and maintained Plaintiff's and Class members' Private Information, organized, digitized, processed, stored, and retained Plaintiff's and Class members' Private Information alongside other records of Private Information on Defendants' servers and network.

20. Plaintiff and Class members relied on Defendants to keep their Private Information secure, and to use it only for purposes of treatment and billing for authorized treatment, and to implement and follow adequate and reasonable data collection, storage, and retention policies. Defendants maintained and stored the Private Information on systems and networks that were inadequately protected and ultimately accessed without authorization by criminals in the Data Breach.

21. Defendants owed Plaintiff and Class members numerous statutory, regulatory, ethical, contractual, and common law duties to safeguard and keep Plaintiff's and Class members' Private Information confidential, safe, secure, and protected from unauthorized disclosure, access, dissemination, and theft.

22. As early as January 2026—when Metabase code version 1.58 was first released—hackers accessed Defendants' systems, stole Plaintiff's and Class members' Private Information without being detected, and maintained access to the systems for as long the hackers needed to take Plaintiff's and Class members' Private Information.

23. Defendants' security was insufficient to prevent or detect the Data Breach.

24. Defendants' security was inadequate to respond to the Data Breach in a timely manner to limit its impact on Plaintiff's and Class members' Private Information.

25. Defendants' security was insufficient to monitor and detect the activities of the unauthorized persons, including the unauthorized copying and exfiltration of hundreds of thousands of patient records, until it was too late.

26. By the time Defendants finally discovered the Data Breach, the damage was already irreparable. Before this Data Breach, their patients' Private Information was private, and now their Private Information is forever exposed and unsecure.

27. Plaintiff and Class members must now protect themselves and closely monitor their financial and health records for unauthorized activities.

28. Although a customer of Metabase alerted Metabase of the suspicious activity indicating the Data Breach on August 3, 2026, and Metabase released patched versions of its flawed software and publicly disclosed the Data Breach on August 6, 2026, Defendants unreasonably failed to notify Plaintiff and Class members of the Data Breach for 2 months, *i.e.*, until on or after October 9, 2026. Plaintiff and Class members were the most acutely at risk of suffering harm because of the Data Breach, yet Defendants notified them last. There was no excuse for Defendants to delay so long in providing notice, especially after the Data Breach had been detected months prior.

29. Blueberry Medical's home page, blueberrypediatrics.com, has no information about the Data Breach. Defendants continued to interact with Plaintiff and Class members, process claims, charge them money, and accept and share their Private Information, while omitting and concealing the material facts about the Data Breach.

30. Currently, the full extent of the types of sensitive personal information, the scope of the Data Breach, and the details regarding how the Data Breach was carried out are all within the exclusive control of Defendants. However, Plaintiff and Class members are aware that the type of data that was stolen now provides a one-stop shop for identity thieves to wreak complete havoc on their lives. Given the sensitivity and non-modifiable nature of the Private Information, and the criminal targeting and theft of the data, Plaintiff and Class members have all experienced a materialized and imminent risk of identity theft.

31. Defendants could have prevented the Data Breach by properly securing and encrypting the Private Information of Plaintiff and Class members, by properly training their employees to recognize and prevent cybersecurity risks, and/or by implementing and following

adequate procedures to monitor and detect data breaches. Defendants' negligence in safeguarding the Private Information of Plaintiff and Class members was exacerbated by the repeated warnings and alerts directed to U.S. companies warning that they should protect and secure sensitive data, especially in light of the substantial increase in cyberattacks specifically targeting the healthcare sector.

32. The FBI has been warning healthcare providers, covered entities, and business associates, such as Defendants, about the threat posed by the ransomware and others, and to be on the lookout for attacks.

33. The United States Cybersecurity & Infrastructure Security Agency, Department of Justice, and Department of Health & Human Services issued a Joint Cybersecurity Advisory on October 28, 2020, warning of an acute threat to U.S. hospitals and healthcare providers and advising them on how to "ensure that they take timely and reasonable precautions to protect their networks from these threats."[4] The Advisory details at great length the pathways of specific viruses, malware, and online threats, and lists numerous Mitigation Steps, including:

- Patch operating systems, software, and firmware as soon as manufacturers release updates;
- Check configurations for every operating system version for organization-owned assets to prevent issues from arising that local users are unable to fix due to having local administration disabled;
- Regularly change passwords to network systems and accounts and avoid reusing passwords for different accounts;
- Use multi-factor authentication where possible;

[4] https://www.cisa.gov/uscert/sites/default/files/publications/AA20-302A_Ransomware%20_Activity_Targeting_the_Healthcare_and_Public_Health_Sector.pdf (last visited October 30, 2026).

- Disable unused remote access/remote desktop protocol (RDP) ports and monitor remote access/RDP logs;
- Implement application and remote access allow listing to only allow systems to execute programs known and permitted by the established security policy;
- Audit user accounts with administrative privileges and configure access controls with least privilege in mind;
- Audit logs to ensure new accounts are legitimate;
- Scan for open or listening ports and mediate those that are not needed;
- Identify critical assets such as potential database servers, medical records, and telehealth and telework infrastructure; create backups of these systems and house the backups offline from the network;
- Implement network segmentation. Sensitive data should not reside on the same server and network segment as the email environment;
- Set antivirus and anti-malware solutions to automatically update; conduct regular scans.

34. In addition, the Advisory emphasizes a focus on awareness and training. Because end users are targeted, employees need to be aware of threats and how they are delivered.

35. On information and belief, Metabase allowed "a remote, unauthenticated attacker to inject arbitrary SQL via the '/reset_password' endpoint and gain administrator access to the connected Metabase instance."[5]

36. The online publication, Techtimes.com, reported that, by the time that Metabase

[5] The vulnerability was published by the Cybersecurity and Infrastructure Security Agency ("CISA") as CVE-2026-72898. https://www.cve.org/CVERecord?id=CVE-2026-72898

disclosed the vulnerability on August 6, 2026, five companies had already lost customer data.[6]

37. According to Metabase's August 6, 2026, notice, the vulnerability was identified and patched as of August 6, 2026 for customers using Metabase Cloud. However, for clients like Blueberry who self-hosted Metabase, the vulnerability was still present.[7] Metabase recommended that self-hosted customers like Blueberry "immediately upgrade to the latest point release of the version you are running and take" addition steps.[8]

38. Blueberry did not follow that recommendation.

39. The flaw that was exploited was introduced to Metabase code in version 1.58, which came out in January 2026. Between January and August 2026, the flaw made customers using Metabase vulnerable to attack. The flaw went undetected for months, and successive code updates were added to the code in the meantime, reintroducing the flaw in each new version of code during that period.

40. The Data Breach was caused by Metabase's negligence and unlawful conduct in engineering code with an easily exploitable critical vulnerability.

41. The Data Breach was caused by Metabase's negligence and unlawful conduct in failing to monitor, test, audit, and review its code for critical vulnerabilities.

42. By choosing to self-host, Blueberry assumed the duty and obligation to closely monitor for the availability of vital security patches and to quickly and effectively implement such patches as the circumstances required. Although the security patch was prepared and rolled out to cloud users, and was available to Blueberry as of August 6, 2026, and although the CISA published CVE-2026-72898 on August 10, 2026, assigning it a score of "10.0" and "Critical"

---

[6] https://www.techtimes.com/articles/324060/20260812/metabase-sql-injection-breached-five-companies-exposed-all-connected-database-credentials.htm

[7] https://www.metabase.com/blog/security-update-6-aug-2026

[8] *Id.*

severity, Blueberry claims it did not discover that its systems were compromised until August 22, 2026. *See* **Exhibit A**.

43. The Data Breach was caused by Blueberry's negligence and unlawful conduct in failing to update its self-hosted Metabase code in a timely manner once patches were made available and published.

44. The Data Breach was caused by Blueberry's negligence and unlawful conduct in negligently appointing Metabase to engineer software security and failing to monitor Metabase's practices with respect to the security of Blueberry's patients' data in Blueberry's possession.

45. Despite the prevalence of public announcements of these data breach and data security compromises and despite numerous attempts on the part of the federal government to inform companies, like Defendants, of the threats facing Defendants, and despite having ample time to implement precautions and training, Defendants were negligent and did not adequately prepare for this wholly foreseeable event; thus, allowing extremely sensitive data to be accessed, viewed and stolen by criminals. Defendants breached duties to take appropriate steps to protect Plaintiff's and Class members' Private Information from being compromised and failed to adequately notify them that the Data Breach took place.

46. Unfortunately for Plaintiff and Class members, their Private Information was not secured in the manner required by law that would have prevented the Data Breach.

47. What is worse, despite Defendants' obligations under the law to promptly notify affected individuals so they can take appropriate action, Defendants failed to promptly provide such notice in the most expedient time possible and without unreasonable delay, failed to include in the Data Breach notification letter a sufficient description of the Data Breach or the information needed by Plaintiff and Class members to react appropriately to the Data Breach,

including taking whatever mitigation measures are necessary.

48. As a result, this unauthorized access, disclosure, and exfiltration remains unremedied, and Plaintiff and Class members will have to continue to monitor their accounts and Private Information to protect themselves.

49. Defendants had specific obligations imposed on them by contracts and law to ensure the adequate protection of such information. For example, as business associates under HIPAA, Defendants were required to maintain the confidentiality and security of the Private Information of Plaintiff and Class members.

50. Defendants are regulated by the Health Insurance Portability and Accountability Act ("HIPAA") (45 C.F.R. § 160.102), and are required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C, which establish national security standards and duties for Defendants' protection of medical information maintained in electronic form.

51. HIPAA requires Defendants to "comply with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

52. "Electronic protected health information" ("PHI") is defined as "individually identifiable health information ... that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

53. HIPAA's Security Rule requires Defendants to: (a) ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits; (b) protect against any reasonably

anticipated threats or hazards to the security or integrity of such information; (c) protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and (d) ensure compliance by their workforce.

54. HIPAA also requires Defendants to “review and modify the security measures implemented ... as needed to continue provision of reasonable and appropriate protection of electronic protected health information,” 45 C.F.R. § 164.306(c), and also to “[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights.” 45 C.F.R. § 164.312(a)(1).

55. The facts of the Data Breach establish that Defendants failed to comply with these Rules. The Data Breach resulted from a combination of inadequacies that demonstrate Defendants failed to comply with safeguards mandated by HIPAA regulations, including, but not limited to, the following:

(a) Failing to ensure the confidentiality and integrity of electronic PHI that Defendants create, receive, maintain, and transmit, in violation of 45 C.F.R. section 164.306(a)(1);

(b) Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights, in violation of 45 C.F.R. section 164.312(a)(1);

(c) Failing to implement policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. section 164.308(a)(1);

(d) Failing to identify and respond to suspected or known security incidents and mitigate, to the extent practicable, harmful effects of security incidents that are

known to the covered entity, in violation of 45 C.F.R. section 164.308(a)(6)(ii);

(e) Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI, in violation of 45 C.F.R. section 164.306(a)(2);

(f) Failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 C.F.R. section 164.306(a)(3);

(g) Failing to ensure compliance with HIPAA security standard rules by their workforce, in violation of 45 C.F.R. section 164.306(a)(4);

(h) Impermissibly and improperly using and disclosing PHI that is and remains accessible to unauthorized persons, in violation of 45 C.F.R. section 164.502, *et seq.*;

(i) Failing to effectively train all members of their workforce (including independent contractors) on the policies and procedures with respect to PHI as necessary and appropriate for the members of their workforce to carry out their functions and to maintain security of PHI, in violation of 45 C.F.R. sections 164.530(b) and 164.308(a)(5); and

(j) Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI in compliance with 45 C.F.R. section 164.530(c).

56. Defendants also violated the duties applicable to them under the Federal Trade Commission Act (15 U.S.C. § 45, *et seq.*) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The FTC, pursuant to that Act, has concluded that a

company's failure to maintain reasonable and appropriate data security for sensitive personal information is an "unfair practice" in violation of the FTC Act.

57. As evidenced by these laws, Defendants owed a common law duty to Plaintiff and Class members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the medical information in their possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendants also owed a duty to Plaintiff and Class members to provide reasonable security in compliance with industry standards and state and federal requirements, and to ensure that their computer systems, networks, and protocols adequately protected this medical information and were not exposed to infiltration. This also included a duty to Plaintiff and Class members to design, maintain, and test their computer systems to ensure that the Private Information was adequately secured and protected; to create and implement reasonable data security practices and procedures to protect the Private Information through processes such as phishing, including adequately training employees and others who accessed information within their systems on how to adequately protect this information and avoid permitting such infiltration such as by use of multi-factor authentication; to implement processes that would detect a breach of their data security systems in a timely manner and to act upon data security warnings and alerts in a timely fashion; to disclose if their computer systems and data security practices were inadequate to safeguard individuals' Private Information from theft; and to disclose in a timely and accurate manner when data breaches occurred.

58. Defendants also needed to segment data by, among other things, creating firewalls and access controls so that if one area of Defendants' network was compromised, hackers cannot gain access to other portions of Defendants' systems. It is apparent that Defendants did not do so.

59. Defendants owed these duties to Plaintiff and Class members because they were foreseeable and probable victims of any inadequate data security practices. Defendants affirmatively chose to design these systems with inadequate user authentication, security protocols and privileges, and set up faulty patching and updating protocols. These affirmative decisions resulted in criminals successfully carrying out a cyberattack and exfiltrating Plaintiff's and Class members' Private Information, to the detriment of Plaintiff and Class members. By taking affirmative acts inconsistent with these obligations that left Defendants' computer systems foreseeably vulnerable to criminals, Defendants disclosed and/or permitted the disclosure of Private Information to unauthorized third parties. Defendants thus failed to preserve the confidentiality of Private Information.

60. The Private Information of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[9] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[10] Criminals can also purchase access to entire company data breaches from $900 to $4,500.

61. Medical identity theft is one of the most common, most expensive, and most difficult-to-prevent forms of identity theft.

62. Indeed, a robust cyber black market exists in which criminals post stolen medical information, Private Information on multiple underground internet websites, commonly referred

---

[9] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed October 30, 2026).

[10] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last accessed October 30, 2026).

to as the dark web, to create fake insurance claims, purchase and resell medical equipment, or access prescriptions for illegal use or resale. According to a 2017 Javelin strategy and research presentation, fraudulent activities based on data stolen in data breaches that are between two and six years old had increased by nearly 400% over the previous four years.[11] Thus, an offer of credit monitoring service that is only for two years is not an adequate remedy.

63. According to Experian, one of the three major credit bureaus, medical records can be worth up to $1,000 per person on the dark web, depending upon completeness.[12] Private Information can be sold at a price ranging from approximately $20 to $300.[13]

64. In this case, all evidence indicates that Plaintiff and Class members' Private Information was left unprotected, to be exfiltrated and posted on the dark web. Thus, this highly valuable data was left to be pilfered by criminals or reviewed by anyone.

65. Medical identity theft can also result in inaccuracies in medical records and costly false claims. It can also have life-threatening consequences. If a victim's health information is mixed with other records, it can lead to misdiagnosis or mistreatment. "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[14]

---

[11] *Id.*

[12] *Id.*

[13] https://www.privacyaffairs.com/dark-web-price-index-2021/(last accessed October 30, 2026).

[14] Michael Ollove, "The Rise of Medical Identity Theft in Healthcare," Kaiser Health News, (2/7/14), https://khn.org/news/rise-of-indentity-theft/ (last accessed October 30, 2026); See also, Medical Identity Theft in the New Age of Virtual Healthcare, IDX (March 15, 2021),

66. The Ponemon Institute found that medical identity theft can cost victims an average of $13,500 to resolve per incident, and that victims often have to pay off the imposter's medical bills to resolve the breach.[15]

67. In another study by the Ponemon Institute in 2015, 31% of medical identity theft victims lost their healthcare coverage as a result of the incident, while 29% had to pay to restore their health coverage, and over half were unable to resolve the identity theft at all.[16]

68. Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, only credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach, is impossible to "close" and difficult, if not impossible, to change.

69. This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained: "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[17]

70. Among other forms of fraud, identity thieves may obtain driver's licenses,

---

https://www.idx.us/knowledge-center/medical-identity-theft-in-the-new-age-of-virtual-healthcare (last accessed October 30, 2026).

[15] Brian O'Connor, Healthcare Data Breach: What to Know About Them and What to Do After One, Experian (June 14, 2018), https://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-to-know-about-them-and-what-to-do-after-one/ (last accessed October 30, 2026).

[16] Ponemon Institute, Fifth Annual Study on Medical Identity Theft, (February, 2015), https://static.nationwide.com/static/2014_Medical_ID_Theft_Study.pdf?r=65 (last accessed October 30, 2026).

[17] Time Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), *available at*: https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last accessed October 30, 2026).

government benefits, medical services, and housing or even give false information to police.

71. The fraudulent activity resulting from the Data Breach may not come to light for years.

72. There may be a time lag between when harm occurs versus when it is discovered, and also between when Private Information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[18]

73. At all relevant times, Defendants knew, or reasonably should have known, of the importance of safeguarding the Private Information of Plaintiff and Class members, and of the foreseeable consequences that would occur if Defendants' computer systems were breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class members as a result of a breach.

74. Plaintiff and Class members now face years of constant monitoring of their financial and personal records, and worry about what unknown criminals might be doing or what they have already done using their Private Information. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their Private Information.

75. Defendants were, or should have been, fully aware of the unique type and the significant volume of data on Defendants' computer network, amounting to thousands of individuals' detailed, personal information and, thus, the significant number of individuals who

---

[18] *Report to Congressional Requesters*, GAO, at 29 (June 2007), available at: https://www.gao.gov/products/gao-07-737 (last accessed October 30, 2026).

would be harmed by the exposure of the Private Information.

76. Specifically, Defendants did not prevent the criminals from disclosing Plaintiff's and Class members' Private Information on the internet. Defendants have not and cannot retrieve the Private Information. The Private Information remains in circulation on the internet for access, viewing, and misuse, causing damage to Plaintiff and Class members and breaching their confidentiality.

77. Defendants have not provided sufficient information in the Data Breach notice letter such that Plaintiff and Class members could understand and appreciate the full nature of the risk to them caused by Defendants' Data Breach, allowing them to make informed decisions about how to protect themselves and their Private Information.

78. Additionally, Defendants have not taken the actions necessary and recommended by the FBI, CISA, NSA and other experts detailed above to prevent an attack by criminals, leaving Plaintiff and Class members vulnerable to subsequent breaches of their Private Information held by Defendants.

79. The injuries to Plaintiff and Class members were directly and proximately caused by Defendants' failure to implement or maintain adequate data security measures for the Private Information of Plaintiff and Class members.

80. As a result of the Data Breach, Plaintiff and Class members made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to: researching the Data Breach; reviewing financial, healthcare, and other accounts for any indications of actual or attempted identity theft or fraud. Plaintiff has spent time dealing with the Data Breach, valuable time that otherwise could have been spent on other activities, including but not limited to work or recreation.

81. As a result of the Data Breach, Plaintiff and Class members have suffered

anxiety as a result of the release of the Private Information, including anxiety about unauthorized parties viewing, selling, and using their information to commit identity theft and fraud.

82. Plaintiff and Class members suffered actual injury from having their Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of their Private Information, a form of property; (b) violation of their privacy rights; (c) loss of the benefit their bargained for data security protections; and (d) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

83. As a result of the Data Breach, Plaintiff and Class members anticipate spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff and Class members are at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

## CLASS ACTION ALLEGATIONS

84. Plaintiff seeks to certify the following Class and Subclasses (collectively, the "Class") of similarly situated persons under Fed. R. Civ. P. 23:

> **Metabase Class**: All persons in the United States whose Private Information was obtained by unauthorized third parties as a result of the Data Breach.
>
> **Blueberry Subclass:** All persons in the United States whose Private Information was obtained from Blueberry by unauthorized third parties as a result of the Data Breach.
>
> **Metabase Texas Subclass**: All persons in Texas whose Private Information was obtained by unauthorized third parties as a result of the Data Breach.
>
> **Blueberry Texas Subclass**: All persons in Texas whose Private Information was obtained from Blueberry by unauthorized third parties as a result of the Data Breach.

85. Excluded from the Class are Defendants' officers and directors; any entity in which Defendants have a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendants. Excluded also from the Class are members of the judiciary to whom this case is assigned, their families and members of their staff.

86. Plaintiff reserves the right to amend or modify the Class definition and/or create additional subclasses as this case progresses.

87. Numerosity. The members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of Class members is unknown to Plaintiff at this time, Plaintiff believes that the Blueberry Subclass alone includes more than 340,000 persons.

88. Commonality. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

a. Whether Defendants unlawfully used, maintained, lost, or disclosed Plaintiff's and Class members' Private Information;

b. Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c. Whether Defendants' data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

d. Whether Defendants' data security systems prior to and during the Data Breach were consistent with industry standards;

e. Whether Defendants owed a duty to Class members to safeguard their Private Information;

f. Whether Defendants breached duties to Class members to safeguard their Private Information;

g. Whether Defendants knew or should have known that their data security systems and monitoring processes were deficient;

h. Whether Defendants should have discovered the Data Breach sooner;

i. Whether Plaintiff and Class members suffered legally cognizable damages as a result of Defendants' misconduct;

j. Whether Defendants' conduct was negligent;

k. Whether Defendants were unjustly enriched by unlawfully retaining a benefit to which Plaintiff and Class members have a superior right in equity; and

l. Whether Plaintiff and Class members are entitled to damages, punitive damages, treble damages, and/or injunctive or other equitable relief.

89. Typicality. Plaintiff's claims are typical of those of other Class members because Plaintiff's information, like that of every other Class member, was compromised in the Data Breach.

90. Adequacy of Representation. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff's counsel is competent and experienced in litigating class actions.

91. Predominance. Defendants have engaged in a common course of conduct toward Plaintiff and Class members, in that all of Plaintiff's and Class members' Private Information was stored on Defendants' network and unlawfully accessed in the same way. The common issues arising from Defendants' conduct affecting Class members set out above predominate

over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

92. Superiority. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendants. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

93. Defendants acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

**COUNT I**
**Negligence**
**(on behalf of Plaintiff and all Classes)**

94. Plaintiff re-alleges and incorporates by reference all of the foregoing paragraphs in the Complaint as if fully set forth herein.

95. As a condition of obtaining treatment, Plaintiff and Class members provided Defendants with their Private Information.

96. Plaintiff and Class members entrusted their Private Information to Defendants with the understanding and relying upon Defendants to exercise reasonable care in the protection of their Private Information.

97. Defendants had a duty to take reasonable measures to protect the Private Information of Plaintiff and Class members from unauthorized disclosure to third parties. This duty is inherent in the nature of the exchange of highly sensitive personal information in connection with the patient-physician relationship.

98. Defendants had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and Class members could and would suffer if the Private Information were wrongfully disclosed in a Data Breach.

99. Defendants knew or reasonably should have known that the failure to exercise due care in the collecting, storing, using, and retaining of the Private Information of Plaintiff and Class members, without adequate data security, involved an unreasonable risk of harm to Plaintiff and Class members.

100. Defendants had a duty to exercise reasonable care in safeguarding, securing, retaining, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, configuring, maintaining, and testing Defendants' security protocols to ensure that the Private Information of Plaintiff and Class members in Defendants' possession was adequately secured and protected.

101. Defendants also had a duty to exercise appropriate practices to remove Private Information that was no longer required.

102. Defendants had a duty to encrypt the sensitive Private Information while stored and maintained.

103. Defendants had a duty to segregate sensitive Private Information from other portions of the network, such as by using firewalls.

104. Defendants had a duty to properly train employees to recognize phishing attempts and other common data security risks.

105. Defendants also had a duty to implement and maintain procedures to detect and prevent the improper access, exfiltration, and misuse of Private Information.

106. Defendants' duty to use reasonable security measures arose as a result of the relationship that existed between Defendants and Plaintiff and Class members. Plaintiff and Class members entrusted Defendants with their Private Information and relied upon Defendants to implement adequate data security and reasonable data retention policies.

107. Defendants were subject to an independent duty untethered to any contract between Defendants and Plaintiff or Class members.

108. A breach of security, unauthorized access, and resulting injury to Plaintiff and Class members was reasonably foreseeable, particularly in light of Defendants' inadequate security practices, the detailed warnings published by governmental agencies, and news reports of other data breaches.

109. Plaintiff and Class members were the foreseeable and probable victims of Defendants' inadequate and unreasonable data security practices and procedures. Defendants knew or should have known of the inherent risks in collecting and storing the Private Information, the critical importance of providing adequate security of that Private Information, the necessity for encrypting Private Information, and the harm that can arise from retaining Private Information following the expiration of any legitimate business purpose.

110. Defendants' conduct created a foreseeable risk of harm to Plaintiff and Class members. Defendants solicited, collected, digitized, and aggregated Plaintiff's and Class members' Private Information, failed to encrypt the Private Information, failed to implement

other reasonable industry standard measures to safeguard Private Information, and failed to implement retention policies that delete Private Information.

111. Plaintiff and Class members had no ability to protect their Private Information that was in, and remains in, Defendants' possession, and no sign that Defendants were failing and refusing to implement and maintain reasonable data security practices over their Private Information until they received their notification letters.

112. Defendants were in a position to protect against the harm suffered by Plaintiff and Class members as a result of the Data Breach.

113. Defendants had a duty to adequately disclose that the Private Information might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice is necessary to allow Plaintiff and the Class members to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Information.

114. Defendants had a duty to employ proper procedures to prevent the unauthorized disclosure and unauthorized sharing of the Private Information to criminals.

115. Defendants, through actions and/or omissions, unlawfully breached duties to Plaintiff and Class members by failing to implement and maintain industry-standard protocols and to exercise reasonable care in protecting and safeguarding the Private Information of Plaintiff and Class members.

116. Defendants improperly and inadequately safeguarded the Private Information of Plaintiff and Class members in violation of standard industry rules, regulations, and practices at the time of the Data Breach.

117. Defendants, through actions and/or omissions, unlawfully breached the duty to Plaintiff and Class members by failing to have appropriate procedures in place to detect and prevent unauthorized dissemination of Private Information.

118. Defendants breached the duty to remove Private Information that they were no longer required to retain pursuant to regulations.

119. Defendants breached the duty to encrypt Private Information and to segregate it from other portions their network.

120. Defendants breached the duty to adequately train employees to recognize and avoid phishing attempts and other basic cybersecurity risks.

121. Defendants, through actions and omissions, unlawfully breached the duty to adequately and timely disclose to Plaintiff and Class members the existence and scope of the Data Breach.

122. Defendants breached the duty to safeguard Plaintiff's and Class members' Private Information by failing to retain such information in an encrypted form.

123. But for Defendants' wrongful and negligent breach of duties owed to Plaintiff and Class members, the Private Information of Plaintiff and Class members would not have been compromised.

124. There is a close causal connection between Defendants' failure to implement security measures to protect the Private Information of Plaintiff and Class members and the harm, or risk of imminent harm, suffered by Plaintiff and Class members. The Private Information of Plaintiff and Class members was lost and accessed as the proximate result of Defendants' failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

125. As a direct and proximate result of Defendants' numerous negligent acts and omissions, Plaintiff and Class members are at a substantial, impending, and imminent risk of identity theft, and they have been forced to take mitigation steps, thereby incurring costs, to ensure their personal and financial safety.

126. As Defendants instructed, advised, and warned in the notice letters, Plaintiff and Class members must now closely monitor their financial accounts to guard against future identity theft and fraud. Plaintiff and Class members have heeded such warnings to mitigate against the imminent risk of future identity theft and financial loss. Such mitigation efforts included, and will include into the future, protective steps: *e.g.*, reviewing financial statements, changing passwords, and signing up for credit and identity theft monitoring services. The loss of time and other mitigation costs are tied directly to guarding against and mitigating against the imminent risk of identity theft.

127. As a direct and proximate result of Defendants' negligent acts and omissions, Plaintiff and Class members have suffered actual and concrete injuries and will suffer additional injuries into the future, including economic and non-economic damages in the following forms: (a) invasion of privacy; (b) financial costs incurred mitigating the imminent risk of identity theft; (c) loss of time and loss of productivity incurred mitigating the imminent risk of identity theft; (d) financial costs incurred due to actual identity theft; (e) the cost of future identity theft monitoring; (f) loss of time incurred due to actual identity theft; (g) loss of time and annoyance due to increased targeting with phishing attempts and fraudulent robo-calls; and (h) and diminution of value of their Private Information.

128. Additionally, as a direct and proximate result of Defendants' negligence, Plaintiff and Class members have suffered and will suffer the continued risks of exposure of their Private Information, which remains in Defendants' possession and is subject to further

unauthorized disclosures so long as Defendants fail to show that they undertake appropriate and adequate measures to protect the Private Information in their possession. Plaintiff and Class members are, therefore, also seeking injunctive relief for the continued risk to their Private Information, which remains in the possession of Defendants, and which is subject to further breaches, so long as Defendants fails to undertake appropriate and adequate measures to safeguard the Private Information.

129. As a direct and proximate result of Defendants' negligence, Plaintiff and Class members are entitled to recover actual and punitive damages.

**COUNT II**
**Negligence *per se***
**(on behalf of Plaintiff and all Classes)**

130. Plaintiff re-alleges and incorporates by reference all of the foregoing paragraphs in the Complaint as if fully set forth herein.

131. Defendants violated HIPAA regulations, including by:

- Failing to ensure the confidentiality and integrity of electronic PHI that Defendants create, receive, maintain, and transmit, in violation of 45 C.F.R. section 164.306(a)(1);
- Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights, in violation of 45 C.F.R. section 164.312(a)(1);
- Failing to implement policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. section 164.308(a)(1);
- Failing to identify and respond to suspected or known security incidents

and mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity, in violation of 45 C.F.R. section 164.308(a)(6)(ii);

- Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI, in violation of 45 C.F.R. section 164.306(a)(2);
- Failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 C.F.R. section 164.306(a)(3);
- Failing to ensure compliance with HIPAA security standard rules by their workforce, in violation of 45 C.F.R. section 164.306(a)(4);
- Impermissibly and improperly using and disclosing PHI that is and remains accessible to unauthorized persons, in violation of 45 C.F.R. section 164.502, *et seq.*;
- Failing to effectively train all members of their workforce (including independent contractors) on the policies and procedures with respect to PHI as necessary and appropriate for the members of their workforce to carry out their functions and to maintain security of PHI, in violation of 45 C.F.R. sections 164.530(b) and 164.308(a)(5); and
- Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI in compliance with 45 C.F.R. section 164.530(c).

132. "Section 5 of the FTC Act [15 U.S.C. § 45] is a statute that creates enforceable duties, and this duty is ascertainable as it relates to data breach cases based on the text of the statute and a body of precedent interpreting the statute and applying it to the data beach context." *In re Capital One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 407 (E.D. Va. 2020). "For example, in *F.T.C. v. Wyndham Worldwide Corp.*, 799 F.3d 236, 240 (3d Cir. 2015), the United States Court of Appeals for the Third Circuit affirmed the FTC's enforcement of Section 5 of the FTC Act in data breach cases." *Capital One*, 488 F. Supp. 3d at 407.

133. Plaintiff's and Class members' Private Information was and is nonpublic personal information and customer information.

134. Plaintiff and Class members are in the group of persons that HIPAA and the FTC Act were enacted and implemented to protect, and the harms they suffered in the Data Breach as a result of Defendants; violations of HIPAA and the FTC Act were the types of harm the statutes and regulations are designed to prevent.

135. As a direct and proximate result of Defendants' negligent acts and omissions, Plaintiff and Class members are at a substantial, impending, and imminent risk of identity theft, and they have been forced to take mitigation steps, thereby incurring costs, to ensure their personal and financial safety.

136. As a direct and proximate result of the conduct of Defendants that violated HIPAA and the FTC Act, Plaintiff and Class members have suffered and will continue to suffer the foreseeable economic and non-economic harms as described herein.

137. As a direct and proximate result of Defendants' negligence, Plaintiff and Class members are entitled to recover actual and punitive damages.

## COUNT III
## Breach of Implied Contract
## (on behalf of Plaintiff and all Classes)

138. Plaintiff re-alleges and incorporates by reference all of the foregoing paragraphs in the Complaint as if fully set forth herein.

139. Defendants are covered entities and business associates who provide healthcare and related services over the internet to Plaintiff and Class members. Plaintiff and Class members formed an implied contract with Defendants regarding the provision of those services through their collective conduct, including by Plaintiff and Class members providing their Private Information to Defendants in exchange for the services offered.

140. Through Defendants' offering of these services, they knew or should have known that they needed to protect Plaintiff's and Class members' Private Information in accordance with their own policies, practices, and applicable state and federal law.

141. As consideration, Plaintiff and Class members paid for healthcare services and turned over valuable Private Information to Defendants.

142. Defendants accepted possession of Plaintiff's and Class members' Private Information for the purpose of providing services, including data security, to Plaintiff and Class members.

143. In delivering their Private Information to Defendants in exchange for their services, Plaintiff and Class members intended and understood that Defendants would adequately safeguard their Private Information.

144. Defendants' implied promises to Plaintiff and Class members include, but are not limited to, (1) taking steps to ensure that anyone who is granted access to Private Information, including their business associates, vendors, and/or suppliers, also protect the confidentiality of that data; (2) taking steps to ensure that the Private Information that is placed in the control of their business associates, vendors, and/or suppliers is restricted and limited to achieve an authorized business purpose; (3) restricting access to qualified and trained

employees, business associates, vendors, and/or suppliers; (4) designing and implementing appropriate retention policies to protect the Private Information against criminal data breaches; (5) applying or requiring proper encryption; (6) implementing multifactor authentication for access; (7) reducing the risk of public knowledge of their diagnosis(es) related to the exposure of the identities of their health care providers; and (8) taking other steps to protect against foreseeable data breaches.

145. Plaintiff and Class members would not have entrusted their Private Information to Defendants in the absence of such an implied contract.

146. Had Defendants disclosed to Plaintiff and the Class members that they did not have adequate data security and data supervisory practices to ensure the security of their sensitive data, Plaintiff and Class members would not have agreed to provide their Private Information to Defendants.

147. Defendants recognized (or should have recognized) that Plaintiff's and Class members' Private Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain with Plaintiff and Class members.

148. Defendants violated these implied contracts by failing to employ reasonable and adequate security measures and supervision of their vendors, business associates, and/or suppliers to secure Plaintiff's and Class members' Private Information.

149. A meeting of the minds occurred, as Plaintiff and Class members agreed, *inter alia*, to provide their accurate and complete sensitive personal information to Defendants in exchange for Defendants' agreement to, *inter alia*, protect their Private Information.

150. Plaintiff and Class members have been damaged by Defendants' conduct, including the harms and injuries arising from the Data Breach now and in the future, as alleged herein.

**COUNT IV**
**Breach of Fiduciary Duty**
**(on behalf of Plaintiff and all Classes)**

151. Plaintiff re-alleges and incorporates by reference all of the foregoing paragraphs in the Complaint as if fully set forth herein.

152. A relationship existed between Plaintiff and Class members and Defendants in which Plaintiff and Class members put their trust in Defendants to protect the Private Information of Plaintiff and Class members and Defendants accepted that trust.

153. Defendants breached the fiduciary duties that they owed to Plaintiff and Class members by failing to act with the utmost good faith, fairness, and honesty, failing to act with the highest and finest loyalty, and failing in their duty of care to protect the Private Information of Plaintiff and Class members.

154. Defendants' breach of fiduciary duty was a legal cause of damage to Plaintiff and Class members.

155. But for Defendants' breach of fiduciary duty, the damage to Plaintiff and Class members would not have occurred.

156. Defendants' breach of fiduciary duty contributed substantially to producing the damage to Plaintiff and Class members.

157. As a direct and proximate result of Defendants' breach of fiduciary duty, Plaintiff and Class members are entitled to and demand actual, consequential, and nominal damages and injunctive relief.

**COUNT V**
**Violation of Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA")**
**Tex. Bus. & Com. Code §§ 17.41, *et seq.***
**(on behalf of Plaintiff and the Metabase Texas Subclass and Blueberry Texas Subclass)**

158. Plaintiff re-alleges and incorporates by reference all of the foregoing paragraphs in the Complaint as if fully set forth herein.

159. Defendants are "persons" as defined by Tex. Bus. & Com. Code § 17.45(3).

160. Plaintiff and the Metabase Texas Subclass members and Blueberry Texas Subclass members (together, the "Texas Subclasses") are "consumers," as defined by Tex. Bus. & Com. Code § 17.45(4).

161. Defendants advertised, offered, or sold services in Texas and engaged in trade or commerce directly or indirectly affecting the people of Texas, as defined by Tex. Bus. & Com. Code § 17.45(6).

162. Defendants engaged in false, misleading, or deceptive acts and practices, in violation of the Tex. Bus. & Com. Code § 17.46(b), including:

a. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or qualities that they do not have;

b. Representing that goods or services are of a particular standard, quality or grade, if they are of another;

c. Advertising goods or services with intent not to sell them as advertised.

163. Defendants' false, misleading, and deceptive acts and practices include:

a. Failing to exercise reasonable care in safeguarding, securing, retaining, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties;

b. Failing to design, configure, maintain, and test Defendants' security protocols to ensure that the Private Information of Plaintiff and Texas Subclass members in Defendants' possession was adequately secured and protected;

c. Failing to exercise appropriate practices to remove Private Information that was no longer required;

d. Failing to encrypt the sensitive Private Information while stored and maintained;

e. Failing to segregate sensitive Private Information from other portions of the network, such as by using firewalls;

f. Failing to properly train employees to recognize phishing attempts and other common data security risks;

g. Failing to implement and maintain procedures to detect and prevent the improper access, exfiltration, and misuse of Private Information;

h. Failing to monitor for availability of critical security patches and security recommendations from service providers;

i. Failing to comply with the regulations that applied to them under the FTC Act and the HIPAA;

j. Omitting, suppressing, and concealing material facts regarding inadequate data security practices;

k. Failing to notify Plaintiff and Texas Subclass members of the Data Breach in a reasonable time and in a reasonable manner.

164. Defendants intended to mislead Plaintiff and Texas Subclass members and to induce them to rely on their misrepresentations and omissions.

165. Defendants' misrepresentations and omissions were material and were likely to mislead reasonable consumers.

166. Had Defendants not been deceptive and disclosed the material facts, Plaintiff and Texas Subclass members would not have suffered in the Data Breach, and would not have sought or accepted services from Defendants.

167. Defendants had a duty to disclose material facts to Plaintiff and Texas Subclass members because they were in exclusive possession of the material facts and knew that Plaintiff and Texas Subclass members would deem those facts important to their decision to seek and obtain Defendants' services. In addition, Defendants were in a confidential relationship with Plaintiff and Texas Subclass members in the context of the patient-physician relationship, which requires confidentiality and adequate steps taken to maintain confidentiality.

168. Defendants engaged in unconscionable acts and courses of conduct, in violation of Tex. Bus. & Com. Code § 17.50(a)(3). Defendants engaged in acts or practices, which to Plaintiff's and Texas Subclass members' detriment, took advantage of their lack of knowledge, ability, experience, or capacity to a grossly unfair degree.

169. Plaintiff and Texas Subclass members had no knowledge and no way to gain knowledge regarding the deficiencies alleged herein in Defendants' data security practices. Defendants purport to be experts and owe professional and contractual duties to implement data security in their own networks, which stored and exercised custody and control over Plaintiff's and Texas Subclass members' Private Information.

170. As a result of Defendants' violations of the DTPA, Plaintiff and Texas Subclass members have suffered actual and concrete injuries and will suffer additional injuries into the future, including economic and non-economic damages in the following forms: (a) invasion of privacy; (b) financial costs incurred mitigating the imminent risk of identity theft; (c) loss of time and loss of productivity incurred mitigating the imminent risk of identity theft; (d) financial costs incurred due to actual identity theft; (e) the cost of future identity theft

monitoring; (f) loss of time incurred due to actual identity theft; (g) loss of time and annoyance due to increased targeting with phishing attempts and fraudulent robo-calls; and (h) and diminution of value of their Private Information.

**COUNT VI**
**Unjust Enrichment**
**(on behalf of Plaintiff and all Classes)**

171. Plaintiff re-alleges and incorporates by reference paragraphs 1–93 as if fully set forth herein.

172. This claim is brought in the alternative to Plaintiff's other claims at law.

173. Defendants benefited from receiving Plaintiff's and Class members' Private Information.

174. Defendants also understood and appreciated that Plaintiff's and Class members' Private Information was private and confidential, and its value depended upon Defendants maintaining the privacy and confidentiality of that information.

175. Plaintiff and Class members conferred a benefit upon Defendants by paying an amount of money that covered their services, and in connection therewith, by agreeing to provide access to their Private Information to Defendants with the understanding that Defendants would implement and maintain reasonable data privacy and security practices and procedures. Plaintiff and Class members should have received adequate protection and data security.

176. Defendants knew Plaintiff and Class members conferred a benefit which Defendants accepted. Defendants profited from these transactions and appreciated the benefits.

177. Defendants appreciated the benefits in reduced costs of overhead by failing to employ adequate human and technical resources to protect their systems from foreseeable cyberattacks, and to respond and remediate immediately.

178. Defendants failed to provide reasonable security, safeguards, and protections to the Private Information of Plaintiff and Class members.

179. Defendants should not be permitted to retain money rightfully belonging to Plaintiff and Class members, because Defendants failed to implement appropriate data security measures and caused the Data Breach.

180. Defendants accepted and wrongfully retained these benefits to the detriment of Plaintiff and Class members.

181. Defendants' enrichment at the expense of Plaintiff and Class members is and was unjust.

182. As a result of Defendants' wrongful conduct, as alleged above, Plaintiff and Class members seek restitution of their money paid to Defendants, and disgorgement of all profits, benefits, imposition of a constructive trust, and other compensation obtained by Defendants calculated as the difference between the cost for adequate data security and the lesser costs Defendants actually incurred by cutting corners, plus attorneys' fees, costs, and interest thereon.

**COUNT VII**
**Declaratory Relief**
**(on behalf of Plaintiff and all Classes)**

183. The Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*., provides that a Court may declare the rights and legal relations of the parties and grant further relief as necessary. The Court has broad authority to prohibit conduct of parties, such as the unlawful conduct alleged herein.

184. An actual controversy exists regarding the various duties of Defendants to implement and maintain adequate data security because Defendants continue to possess Plaintiff's and Class members' Private Information and will acquire more in the future.

Plaintiff's and Class members face an ongoing threat from the possibility that the Data Breach is not fully contained in Defendants' systems, that Defendants' forensic investigation and remedial efforts were not sufficient, and that Defendants' data security practices, or lack thereof, continue to fail to provide reasonable data security for Plaintiff and Class members against new threats going forward.

185. Accordingly, Plaintiff requests declaratory relief as follows:

a. Defendants owe a duty to use reasonable data security to secure the Private Information;

b. Defendants have a duty to notify impacted individuals and provide details concerning the manner in which the Data Breach was carried out, the identity of the criminals suspected of obtaining unauthorized access, and other details to enable Plaintiff and Class members to understand the risks they face;

c. Defendants breached the foregoing duties;

d. Defendants should be ordered to disclose to Plaintiff and Class members the details of their forensic investigation and incident response so that Plaintiff and Class members can understand the risks they face and whether Defendants' characterizations of the Data Breach are accurate;

e. Defendants should be ordered (subject to an agreeable protective order) to allow Plaintiff and Class members to inspect Defendants' data security systems and processes to ensure that they are adequate.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for judgment against Defendants and in Plaintiff's favor, as follows:

a) For an Order certifying this action as a Class action and appointing Plaintiff as Class Representative and her counsel as Class Counsel;

b) For damages in an amount to be determined by the trier of fact;

c) For treble damages, punitive damages, and all damages available under the law;

d) For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class members' Private Information, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and Class members;

e) For equitable relief compelling Defendants to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of Private Information compromised during the Data Breach;

f) For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendants' wrongful conduct;

g) Imposition of a constructive trust for the benefit of Plaintiff and Class members;

h) Pre- and post-judgment interest on any amounts awarded;

i) For reasonable attorney's fees, costs, and expenses, and,

j) Such other and further relief as this court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Plaintiff TRACEY SEMIEN, on behalf of her minor child R.S., and on behalf of all other persons similarly situated,

By: */s/ Mark L. Javitch*
Mark L. Javitch (SBN 323729)
**JAVITCH LAW OFFICE**

3 East 3rd Avenue, Suite 200
San Mateo, CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705
*mark@javitchlawoffice.com*

Thomas A. Zimmerman, Jr.
*(pro hac vice forthcoming)*
**ZIMMERMAN LAW OFFICES, P.C.**
7199 S. Kingery Highway, Unit 1148
Willowbrook, IL 60527
Phone: (312) 440-0020
Fax: (312) 440-4180
*tom@attorneyzim.com*
www.attorneyzim.com

Counsel for the Plaintiff and the Proposed Classes and Subclasses